UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT MICHIGAN

GLOBAL GENERATION GROUP, LLC,  Civil Case No.
a Michigan limited liability company, and  Hon.
BENCHMARK CAPITAL, LLC
a Michigan limited liability company,

      Plaintiffs,

v.

FRANK MAZZOLA, an individual,
EMILIO DISANLUCIANO, an individual,
FB MANAGEMENT ASSOCIATES II, LLC,
a Delaware limited liability company,
PIPIO MANAGEMENT ASSOCIATES, LLC,
a Delaware limited liability company,
FELIX VENTURE PARTNERS QWIKI MANAGEMENT ASSOCIATES, LLC,
a Delaware limited liability company,
FACIE LIBRE MANAGEMENT ASSOCIATES, LLC
a Delaware limited liability company, and
FMOF MANAGEMENT ASSOCIATES, LLC
a Delaware limited liability company,

      Defendants.

---

HOWARD & HOWARD ATTORNEYS PLLC
Michael J. Beals (P39835)
Michael F. Wais (P45482)
Attorneys for Plaintiffs
450 West Fourth Street
Royal Oak, MI  48067-2557
(248) 645-1483
mbeals@howardandhoward.com
mwais@howardandhoward.com

---

## **COMPLAINT AND JURY DEMAND**

      NOW COME, Plaintiffs Global Generation Group, LLC and Benchmark

Capital, LLC (collectively "Plaintiffs"), and for their Complaint against

Defendants Frank Mazzola, Emilio DiSanluciano, FB Management Associates II, LLC, Pipio Management Associates, LLC, Felix Venture Partners Qwiki Management Associates, LLC, Facie Libre Management Associates, LLC, and FMOF Management Associates, LLC, state as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this suit after Defendants fraudulently misrepresented and deceived Plaintiff into investing over $6.3 Million Dollars in a sham corporation, Felix Multi-Opportunity Fund II, LLC ("FMOF II") that was established and operated by Defendants.   FMOF II was designed by Defendants as a way to pool investments for shares of Facebook, Inc. ("Facebook"), Palantir Technologies, Inc. ("Palantir") and Groupon, Inc. ("Groupon").   Defendants fraudulently induced Plaintiffs into purchasing interest or "Series" in FMOF II, which in turn held Facebook, Palantir and Groupon shares.   Defendants grossly overstated the value of the Facebook and Palantir shares[1] which allowed Defendants to charge a higher rate for the Series Plaintiffs were purchasing when investing in FMOF II.  When Plaintiffs requested liquidity and exercised their Put Right that allowed them to cash out their Series and collect on value of their Facebook and Palantir Shares,  Defendants unlawfully refused and continued to

---

[1] Plaintiffs' Groupon shares are not at issue in this lawsuit.

hold on to the Shares.  To date, Defendants have sold Plaintiff Global's Palantir shares but have refused to pay Plaintiff Global the value of the shares. Defendants wrongfully retained money on the sale of both Plaintiffs Facebook shares after failing to pay the Put timely.  Plaintiffs are left with no other option but to file this lawsuit.

## JURISDICTION AND VENUE

2.      Plaintiff Global Generation Group, LLC ("Global") is a Michigan Limited Liability Company whose members are all residents of the State of Michigan.   All of Global's actions in this matter occurred within the State of Michigan.  John Syron ("Syron") is the managing member of Global.

3.      Plaintiff Benchmark Capital, LLC ("Benchmark") is a Michigan Limited Liability Company whose members are all residents of the State of Michigan.  All of Benchmark's actions in this matter occurred within the State of Michigan. Syron is the managing member of Benchmark as well.

4.      Defendant Frank Mazzola ("Mazzola") is a resident of New York.

5.      Defendant Emilio DiSanluciano ("DiSanluciano") is a resident of California.

6.      Defendant FB Management Associates II, LLC ("FB Management") is a Delaware Limited Liability Company whose Registered Agent is Harvard

Business Services, Inc., located at 16192 Coastal Highway, Lewes, Delaware 19985.   Upon information and belief, there are no Michigan residents who are members of FB Management.

7.   Defendant Pipio Management Associates, LLC ("Pipio Management") is a Delaware Limited Liability Company whose Registered Agent is National Corporate Research LTD, located at 615 S. Dupont Highway, Dover, Delaware 19901.  Upon information and belief, there are no Michigan residents who are members of Pipio Management.

8.   Defendant Felix Venture Partners Qwiki Management Associates, LLC ("Felix Venture Partners") is a Delaware Limited Liability Company whose Registered Agent is National Corporate Research LTD, located at 615 S. Dupont Highway, Dover, Delaware 19901.   Upon information and belief, there are no Michigan residents who are members of Felix Venture Partners.

9.   Defendant Facie Libre Management Associates, LLC ("Facie Libre Management") is a Delaware Limited Liability Company whose Registered Agent is National Corporate Research LTD, located at 615 S. Dupont Highway, Dover, Delaware 19901.  Upon information and belief, there are no Michigan residents who are members of Facie Libre Management.

10.    Defendant FMOF Management Associates, LLC ("FMOF Management") is a Delaware Limited Liability Company whose Registered Agent is National Corporate Research LTD, located at 615 S. Dupont Highway, Dover, Delaware 19901.  Upon information and belief, there are no Michigan residents who are members of FMOF Management.

11.    Jurisdiction is proper in this Court as there is complete diversity of citizenship and the amount in controversy easily exceeds $75,000 exclusive of interest, costs and fees.  *See* 28 USC 1332.

12.    Jurisdiction is also appropriate in this Court as there are federal questions at issue arising under federal law.  *See* 28 USC 1331.   Venue is proper in this Court as, inter alia, events giving rise to this lawsuit occurred in this district and as one or more of the Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

### *Mazzola* & *DiSanluciano*

13.    Mazzola is a Manager of FMOF Management and Facie Libre Management and, upon information and belief, is also a Manger of FB Management, Pipo Management and Felix Venture Partners as well.

5

14.     Upon information and belief, DiSanluciano is a Manager of Defendants FMOF Management, Facie Libre Management, FB Management, Pipio Management, and Felix Venture Partners.

15.     Mazzola and DiSanluciano are also individual Guarantors of Defendant FMOF Management's payment obligations to Plaintiffs Benchmark and Global.  The payments obligations include all amounts that Defendant FMOF Management may be required to pay to Plaintiffs Benchmark and Global related to the Put Rights under Section III of the December 7, 2011 FMOF II Agreement ("FMOF II Agreement") attached hereto as **Exhibit A**.  *See* **Exhibit B**, Guaranty paragraph 2(b) & (c).  This guaranty also includes payment of Benchmark and Global's costs of collection, including reasonable attorneys fees actually incurred in enforcing the obligations of FMOF Management and Guarantors.  *See* **Exhibit B**, paragraph 2(d).

### *FB Management* & *Pipio Management* & *Felix Venture Partners*

16.     FB Management, Pipio Management and Felix Venture Partners are also individual Guarantors of Defendant FMOF Management payment obligations of to Plaintiffs Benchmark and Global.  These payment obligations include all amounts that Defendant FMOF Management may be required to pay to Plaintiffs Benchmark and Global related to the Put Rights under Section III of the FMOF II

Agreement attached hereto as **Exhibit A**. *See* **Exhibit B**, Guaranty paragraph 2(a). This guaranty also includes payment of Benchmark and Global's costs of collection, including reasonable attorneys fees actually incurred in enforcing the obligations of FMOF Management and Guarantors. *See* **Exhibit B**, paragraph 2(d).

### *Facie Libre Management*

17.    Facie Libre Management is a Manager of FMOF II which held 108,349 shares of Class B common stock of Facebook, Inc that Facie Libre Management represented were owned by Plaintiffs as set forth in **Exhibit A** hereto.

18.    Facie Libre Management is also an individual Guarantor of the payment obligations of Defendant FMOF Management to Plaintiffs Benchmark and Global with respect to payment of all amounts that Defendant FMOF Management may be required to pay to Plaintiffs Benchmark and Global related to the Put Rights under Section III of the FMOF II Agreement attached hereto as **Exhibit A**. *See* **Exhibit B**, Guaranty paragraph 2(a). This guaranty also includes payment of Benchmark and Global's costs of collection, including reasonable attorneys fees actually incurred in enforcing the obligations of FMOF Management and Guarantors. *See* **Exhibit B**, paragraph 2(d).

7

### *FMOF Management*

19.    FMOF Management is also a Manager of FMOF II.    FMOF Management also made specific representations as reflected in **Exhibit A** that included that Plaintiffs Global and Benchmark owned 933,334 shares of Palantir Technologies, Inc. and 108,349 shares of Class B common stock of Facebook, Inc.

20.    FMOF Management is also an individual Guarantor of its payment obligations to Plaintiffs Benchmark and Global with respect to payment of all amounts that it may be required to pay to Plaintiffs Benchmark and Global related to the Put Rights under Section III of the December 7, 2011 Agreement attached hereto as **Exhibit A**.  *See* **Exhibit B**, Guaranty paragraph 2(a).  This guaranty also includes payment of Benchmark and Global's costs of collection, including reasonable attorneys fees actually incurred in enforcing the obligations of FMOF Management and Guarantors.  *See* **Exhibit B**, paragraph 2(d).

## BACKGROUND

21.    This action arises out of a series of contractual breaches, fraudulent misrepresentations and other deceptive and tortious actions by Defendants in connection with Plaintiffs' investments in FMOF II.  In the course of enticing Plaintiffs to invest in FMOF II, Defendants created, marketed, managed,

misrepresented, guaranteed obligations and acted in a tortious manner related to FMOF II.

22.     Defendants misled Plaintiffs and overstated the purchase price of the shares Plaintiffs purchased when investing in FMOF II.  The purchase price of the shares, as stated by Defendants, far exceeded the actual market price of the shares further exemplifying Defendants' undisclosed self-dealing.

23.     Defendants also breached their contractual obligations and otherwise engaged in additional tortious activities, with respect to the shares of Facebook, Inc. ("Facebook") and Palantir Technologies, Inc. ("Palantir") that was owned by Plaintiffs.

24.     For example, Plaintiffs "put" their Facebook shares to Defendant, FMOF Management, pursuant to the terms of Section III of the parties December 7, 2011 agreement.  **Exhibit A.**

25.      Despite Defendants' contractual obligation to sell and pay Plaintiffs for their shares within 45 days of the Put Notice (as defined in Section III of **Exhibit A** hereto), Defendants failed to sell the shares as requested, failed to deliver the payment to Plaintiffs as required, and failed to honor their guarantees of the obligation as set forth in **Exhibit B** hereto.

26.     Defendants misrepresented to Plaintiffs, again and again, that they would be selling the shares shortly.  **Exhibit L**

27.     After Defendants' representations proved, again and again, to be untrue, Plaintiff Global sent clear and unequivocal instructions to cease all efforts to sell the shares and to tender the shares to Plaintiff.  **Exhibit M**

28.     Defendants ignored the instruction not to sell, and, instead, sold Plaintiff Global's Palantir shares without any authority whatsoever to do so.

29.     Upon information and belief, Defendants held onto the shares, for approximately one year, while the value of the shares significantly increased.

30.     Furthermore, after Defendants did finally sell the shares, Plaintiffs were not paid the actual selling price of the shares, and were also not paid interest, costs or attorney's fees, leaving Defendants to reap all or at least the vast majority of the extra benefits of wrongfully holding Plaintiffs shares long past the date the shares were required to be sold.

31.     Defendants thus pocketed millions of dollars of unjustified gains during the time they wrongfully retained Plaintiffs' Facebook shares.  Defendants' unlawful retention also prevented Plaintiffs from selling their shares at a profit as the share price rose, despite Plaintiffs being the true owners of the shares.

32.    Defendants engaged in a similar scheme with respect to Plaintiff Global's shareholding interests in Palantir Technologies, Inc. ("Palantir") shares where Defendants again unlawfully held onto the Palantir shares past the 45 day mark and unjustifiably retained the profits as the share price climbed (past the 45 day mark).

33.    Furthermore, Defendants have only paid $500,000 of the $2,800,000 owed to Plaintiff Global (as of the 45 day mark) for the Palantir shares, further compounding their deceit.

34.    Defendants Mazzola, Felix Investments, and Facie Libre Management have previously been sued in courts throughout the United States for similar fraudulent actions, including, but not limited to, a lawsuit brought by the United States Securities and Exchange Commission ("SEC") in the Northern District of California.  **Exhibit H.**

## <u>SUMMARY OF THE ACTION</u>

35.    On numerous occasions in 2011, Defendants contacted John Syron in Michigan in order to induce Syron to invest in FMOF II which was operated by some or all of the Defendants.

36.     As a result of Defendants representations, marketing, and solicitations of Syron, Syron, as managing member of Global and Benchmark, invested in FMOF II.

**A.     The Investments**

37.     Specifically, as it relates to the investments at issue in this Lawsuit, Global paid $800,000 on August 11, 2011 which allegedly represented a 100% membership interest in Series F-9.2.11(B) of FMOF II.  Allegedly, FMOF II owned an interest in Facie Libre Associates II, LLC representing the equivalent of 22,857 of Class B Common Stock in Facebook, Inc.  *See* **Exhibit C**, October 4, 2011 letter signed by Defendants Mazzola and DiSanluciano, both as Managers of Defendant FMOF Management.

38.     In addition, Global paid $1,204,990.88 on September 2, 2011 which allegedly represented a 78.4149% membership interest in Series F-9.2.11(A) of FMOF II.  Allegedly, FMOF II owned an interest in Facie Libre Associates II, LLC representing the equivalent of 48,021 of Class B Common Stock in Facebook, Inc.  *See* **Exhibit D**, October 4, 2011 letter signed by Defendants Mazzola and DiSanluciano, both as Managers of Defendant FMOF Management.

39.     The remaining 21.59% interest in Series F-9.211(A) was purchased by Benchmark for $331,695.66 on September 2, 2011.  *See* **Exhibit E**, October 4,

12

2011 letter signed by Defendants Mazzola and DiSanluciano, both as Managers of Defendant FMOF Management.

40.    In addition, Global paid $1,218,750.88 on October 24, 2011 which allegedly represented a 100% membership interest in Series F-10.5 of FMOF II. Allegedly, FMOF II owned an interest in Facie Libre Associates II, LLC representing the equivalent of 37,500 shares of Class B Common Stock in Facebook, Inc.  *See* **Exhibit F**, October 24, 2011 letter signed by Defendants Mazzola and DiSanluciano, both as Managers of Defendant FMOF Management.

41.    Finally, with payments on October 6, 24 and 31 of 2011, Global paid a total of amount of $2,800,000 for a 100% membership interest in Series E-2(B) of FMOF II.  Allegedly, FMOF II owned 933,333 Class A Common Stock in Palantir Technologies, Inc.  *See* **Exhibit G**, December 12, 2011 letter signed by Defendants Mazzola and DiSanluciano, both as Managers of Defendant FMOF Management.

42.    As a result of the investments identified in this Section of the Complaint, Global and Benchmark owned a total of 108,349 shares of Class B Common Stock of Facebook and Global owned 933,334 shares of Palantir (*See* **Exhibit A**, Section I, paragraph 11).

43.    Defendants Mazzola and DiSanluciano signed **Exhibits C – G** of this Complaint as Managers of Defendant FMOF.    The Agreements set forth in **Exhibits C – G** of this Complaint are binding according to their terms.

**B.    Documentation of the Purchases**

44.    In addition to the letters attached as **Exhibits C – G**, the FMOF II investment at issue in this litigation were documented in **Exhibit A,** a 7 page letter agreement dated December 7, 2011 (the "2011 Letter Agreement") that specifically applied to the prior purchases by Plaintiffs as reflected above.    (*See* **Exhibit A**, 1st paragraph).    Indeed, the 2011 Letter Agreement specifically confirms that Plaintiffs owned 108,349 shares of Class B Common Stock of Facebook (*See* **Exhibit A**, Section II, paragraph 5) and 933,334 shares of Palantir (*See* **Exhibit A**, Section I, paragraph 11).

45.    The 2011 Letter Agreement contains a "put right" that entitles the Purchasers to require the Manager of FMOF II to redeem (or purchase) all or any portion of the "investments"  held by Purchaser pursuant to the terms of Section III of the 2011 Letter Agreement.    (*See* **Exhibit A**, Section III, paragraph 1).

46.    The "investments" referenced in paragraph 43 of this Complaint includes Plaintiffs' interests in Facebook and Palantir.

14

47.    Several of the Defendants (as stated in the Jurisdiction and Venue Section of this Complaint) executed a Guarantee and Collateral Assignment Agreement (the "Guarantee). By signing the Guarantee, the Defendants "absolutely, unconditionally and irrevocably" guaranteed the payments the Manager of FMOF II was to make to Plaintiffs as purchasers, and pursuant to the purchasers' put rights.  . *See* **Exhibit B**, paragraph 2.

48.    The 2011 Letter Agreement was signed by FMOF II, Defendant FMOF, Defendant Facie Libre Management and by their Manager Defendant Mazzola.

49.    The 2011 Letter Agreement bound FMOF II, Defendant FMOF, Defendant Facie Libre Management and Defendant Mazzola to the terms as set forth in the 2011 Letter Agreement.

50.    The following individuals and entities signed the Guarantee and are bound to the terms set forth in the Guarantee:  (a) Mazzola, individually; (b) DiSanluciano, individually; (c) FB Management; (d) Pipio Management; (e) Felix Venture Partners; (f) Facie Libre Management; and (g) FMOF Management.

**C.    The Initial Misrepresentations and Failures to Disclose**

51.    Paragraphs 28 – 40 of **Exhibit H,** the SEC Complaint against Mazzola, Felix Investments LLC and Facie Libre Management, identifies many

15

misrepresentations and omissions of material facts in connection with the sale of interests in Facie Libre investment funds.  A copy of the Complaint is attached hereto as **Exhibit H** and paragraphs 28 – 40 thereof are incorporated herein by reference as if set forth herein in full.

52.   The Facebook shares purchased by Plaintiffs were investments in shares held by Facie Libre investment funds.

53.   In connection with the sale of the Facebook shares to Plaintiffs, Defendants failed to disclose and omitted to disclose to Plaintiffs all of the facts set forth in paragraphs 28 – 40 of the SEC Complaint.

54.   In addition, Defendants failed to disclose self-dealing amongst one or more of the Defendants that increased the price charged to Plaintiffs for the investments referenced above.  These undisclosed transactions between some or all of the Defendants led to significantly overstating the purchase price of the investments in order to cause Plaintiffs to pay far more than the actual market price of the shares.

55.   For example, Defendants represented that their purchase price for the Palantir shares was just under $3.00 per share, when, in reality, shares were being sold between $1.30 and $1.70 per share at the time of Global's purchase of the Palantir shares.   As Global owned 933,334 shares of Palantir, a misrepresentation

of $1.00 per share in the purchase price would result in Global either overpaying by $933,334 dollars or Global having purchased approximately 311,112 more shares than Defendants assigned to Global

56.     All of the misrepresentations and omissions set forth above were materially false and misleading.   In addition, these misrepresentations and omissions fraudulently induced Plaintiffs into making the investments referenced above.

57.     In addition, charging Plaintiffs additional amounts over and above the actual purchase price for their shares is a breach of paragraphs 5, 6 and 7 of the 2011 Letter Agreement.  *See* **Exhibit A**.

**D.     The Fraud, Misrepresentations and Contractual Breaches Regarding Plaintiffs' Put Rights in the Facebook and Palantir Shares.**

58.     After fraudulently inducing Plaintiffs to enter into the investments in FMOF II, Defendants continued to defraud, misrepresent and breach their contractual agreements with Plaintiffs as it relates to Plaintiffs put rights in Plaintiffs' Facebook and Palantir Shares.

59.     As it relates to the Facebook shares, Plaintiffs put their shares on August 14, 2012.  *See* **Exhibit I**.

60.     The August 14, 2012 letter attached as **Exhibit I** was a valid put notice under the 2011 Letter Agreement with respect to Plaintiffs Facebook shares.

17

61.     Pursuant to Section III of the 2011 Letter Agreement, **Exhibit A,** the Manager of FMOF II was required to pay the Purchasers the price initially paid for the Facebook shares within 45 days of the August 14, 2012 put notice.  Upon receipt of payment, Plaintiffs were required to then immediately tender the Facebook shares.

62.     Defendants also guaranteed the payment of the monies owed to Plaintiffs upon the exercise of their put rights.

63.     In breach of the parties agreements, Defendants failed to pay Plaintiffs the put price for the Facebook shares within 45 days of the August 14, 2012 put notice – i.e., on or before October 28, 2012.

64.     Instead, Defendants retained Plaintiffs Facebook shares until May 9, 2013, when the shares were finally sold for $27.52 per share.  *See* **Exhibit J**.

65.     As it's related to the Palantir shares, Plaintiff Global put its shares on or about October 9, 2012. *See* **Exhibit K.**

63.     Plaintiffs had numerous conversations and e-mails thereafter regarding the Put of the Palantir shares.  While there may be an issue as to when and if the Palantir shares were Put as provided in the 2011 Letter Agreement, Defendants still sold the Palantir shares and failed to pay Plaintiff Global.

64.     Defendants had no right to sell the Palantir or Facebook shares without paying the Put Price as provided in the 2011 Letter Agreement.

65.     Defendants had no right to sell the Palantir or Facebook shares without simultaneously paying Plaintiffs for their shares, with the payment to Plaintiffs being due within 45 days after the date of the Put.

66.     Defendants sold Plaintiff Global's shares of Palantir without simultaneously paying Plaintiff Global for their shares.

67.     Defendants sold Plaintiffs shares of Facebook without simultaneously paying Plaintiffs for their shares.

68.     Defendants sold Plaintiffs shares of Palantir more than 45 days after Defendants were requested to sell the shares.

69.     Defendants sold Plaintiffs shares of Facebook more than 45 days after the Put notice for the Facebook shares.

## <u>COUNT I – SECURITIES FRAUD – SECTION 10(b) (5)</u>

70.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

71.     The sale of the Series to Plaintiffs, as described above, were the sale of securities as defined in the Securities Act of 1933 and the Securities Exchange Act of 1934.

19

72.     Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange in connection with the transactions, acts and events set forth in this Complaint.

73.     By engaging in the conduct described above, Defendants directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter, made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

74.     By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) there under [17 C.F.R. § 240.10b-5(b)].

## COUNT II – SECURITIES FRAUD, SECTION 17(a)

75.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

76.     By engaging in the acts and conduct alleged above, Defendants directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use

of the mails: (a) with scienter employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

77.     By reason of the foregoing, Defendants have violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### COUNT III – BREACH OF CONTRACT- 2011 LETTER AGREEMENT
### (Defendants Mazzola, FMOF II,  FMOF Management, and Facie Libre)

78.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

79.     Plaintiffs entered into the 2011 Letter Agreement with above referenced Defendants on December 7, 2011 , **Exhibit A.**

80.     Defendants breached the terms and conditions of the 2011 Letter Agreement as set forth above, including by failing to sell the Facebook and Palantir shares as required,  failing to pay Plaintiffs for the Facebook and Palantir shares when they were finally sold, and failing to pay Plaintiffs all other amounts owed to Plaintiffs under the 2011 Letter Agreement. .

81.     Defendants have breached the terms and obligations of the 2011 Letter Agreement and as a result, Plaintiffs have suffered damages.

## COUNT IV –BREACH OF CONTRACT –GUARANTEE
### (All Defendants)

82.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

83.     Plaintiffs entered into the Guarantee with all Defendants on December 7, 2011. **Exhibit B.**

84.     Defendants breached the terms and conditions of the Guarantee by failing to pay the amounts owed to Plaintiffs with respect to the sale of the Palantir and Facebook shares.  Defendants have breached the terms and conditions of the Guarantee and as a result, Plaintiffs have suffered damages.

## COUNT V – FRAUD/MISREPRESENTATION
### (All Defendants)

85.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

86.     Defendants made various misrepresentations to Plaintiffs as set forth above, including but not limited to those misrepresentations made in order to induce them to make the investments referenced above, in order to induce them to enter into the 2011 Letter Agreement and Guarantee, and with respect to the

putting and selling of their shares, Defendants made the misrepresentations with the intent that Plaintiffs would rely upon the misrepresentations and/or the misrepresentations were made recklessly.

87.     Plaintiffs justifiably relied on Defendants misrepresentations.

88.     As a result of Plaintiffs reliance on the material misrepresentations of Defendants, Plaintiffs have suffered damages.

## COUNT VI – INNOCENT MISREPRESENTATION
### (All Defendants)

89.      Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

90.     Defendants made various misrepresentations to Plaintiffs as set forth above, including but not limited to those misrepresentations made in order to induce them to make the investments referenced above, in order to induce them to enter into the 2011 Letter Agreement and Guarantee, and with respect to the putting and selling of their shares, Defendants made the misrepresentations with the intent that Plaintiffs would rely upon the misrepresentations and/or the misrepresentations were made recklessly.

91.     Plaintiffs justifiably relied on Defendants misrepresentations.

92.     As a result of Plaintiffs reliance on the material misrepresentations of Defendants, Plaintiffs have suffered damages.

93.    Plaintiffs' damages have inured to the benefit of Defendants as Defendants were able to retain the increased value in the Facebook and Palantir shares, profit that lawfully belongs to Plaintiffs.

## COUNT VII – UNJUST ENRICHMENT
### (All Defendants)

94.    Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

95.    Defendants wrongfully received extra benefits from Plaintiffs' sales of its investments as set forth above received a benefit It would be unjust to allow Defendants to retain the extra benefits and other profits from the Facebook and Palantir shares in a greater amount than was originally agreed upon between the parties per the 2011 Letter Agreement.

## COUNT VII – UNLAWFUL CONVERSION
### (Defendants Mazzola, FMOF II, FMOF Management, and Facie Libre)

96.     Plaintiffs hereby incorporate the allegations in the paragraphs above as if fully stated herein.

97.    The 2011 Letter Agreement provided Plaintiffs with a right to cash out its Series and collect on the Facebook and Palantir Shares, including profits derived there from.

24

98.     Defendants have unlawfully and substantially interfered with Plaintiffs' right to the Facebook and Palantir shares and profits derived there from.

99.     Defendants have unlawfully exerted dominion and control over Plaintiffs' Facebook and Palantir shares and profits derived there from.

100.    Defendants have acted intentionally by withholding such shares and profits despite Plaintiffs' request to liquidate such.

101.    Defendants' interference is so substantial that it warrants Defendants to pay for the highest market price between the time of conversion and the expiration of a reasonable time in which the Plaintiffs could have purchased other shares in the market.

## **<u>REQUEST FOR RELIEF</u>**

WHEREFORE**,** Plaintiffs are entitled to judgment against Defendants in an amount that exceeds three million dollars ($3,000,000), as well as accrued interest, attorney's fees, costs and all other appropriate relief.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: December 9, 2013       By: _/s/ Michael F. Wais_
                              Michael J. Beals (P39835)
                              Michael F. Wais (P45482)
                              Attorneys for Plaintiffs
                              450 West Fourth Street
                              Royal Oak, MI  48067-2557
                              (248) 645-1483
                              mbeals@howardandhoward.com
                              mwais@howardandhoward.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand trial by jury in this matter.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: December 9, 2013       By: _  /s/ Michael F. Wais_ 
Michael J. Beals (P39835)
Michael F. Wais (P45482)
Attorneys for Plaintiffs
450 West Fourth Street
Royal Oak, MI  48067-2557
(248) 645-1483
mbeals@howardandhoward.com
mwais@howardandhoward.com