UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLOBAL GENERATION GROUP, LLC,
*et al.*,

                Plaintiffs,

v.                                 Civil Action No.  2:13-CV-14979
                                 Honorable Gershwin A. Drain

FRANK MAZZOLA, *et al.*,

                Defendants.
_____/

## ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTIVE RELIEF [#18]

### I.  INTRODUCTION

This case arises out of Plaintiffs, Global Generation Group, LLC's and Benchmark Capital, LLC's, (collectively "Plaintiffs") claims of securities fraud as governed by the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and Rule 10b-5(b), and the Securities Act of 1933, 15 U.S.C. § 77q(a), as well as state law claims of breach of contract, fraud/misrepresentation, innocent misrepresentation, unjust enrichment and unlawful conversion.

Plaintiffs claim that Defendants, Frank Mazzola, Emilio DiSanluciano, FB Management Associates II, LLC, Pipio Management Associates, LLC, Felix Venture Partners Qwiki Management Associates, LLC, Facie Libre Management Associates, LLC and FMOF Management Associates, LLC (collectively "Defendants"), fraudulently misrepresented and deceived Plaintiffs into investing over $6,355,436.84 in a sham corporation, Felix Multi-Opportunity Fund II, LLC ("FMOF II") that was established and operated by Defendants.  Specifically, Plaintiffs argue that Defendants fraudulently induced them into purchasing interest or "Series" in FMOF II, which in turn held pre-IPO shares of

Facebook and Palantir, by overstating the value of the shares which allowed Defendants to charge a higher rate for the Series purchased by Plaintiffs.

Additionally, Plaintiffs assert that they have exercised their "Put Rights," which allowed them to cash out their Series investments and collect on the value of their Facebook and Palantir shares, however Defendants continued to hold on to the shares. Defendants later sold both the Palantir and Facebook shares but retained the sale proceeds.

Defendants filed a Motion to Dismiss in lieu of an Answer on March 10, 2014. Defendants maintain that all of Plaintiffs' claims are subject to mandatory arbitration pursuant to the parties' agreements, as well as raise other arguments concerning the sufficiency of Plaintiffs' factual allegations. The Court scheduled a hearing on Defendants' Motion to Dismiss for June 10, 2014.

Presently before the Court is the Plaintiffs' Emergency Motion for Temporary Restraining Order, filed on April 22, 2014. Plaintiffs maintain that an immediate restraining order is required to preserve Plaintiffs' interests in the shares and profits derived therefrom in order to prevent Defendants from converting, transferring, concealing, squandering or diverting the funds to another member, including transferring the funds beyond the jurisdiction of this Court. Plaintiffs request that $6, 355, 436.84[1] be placed in an escrow account with the Court until the matter is fully adjudicated.

The Court issued an Order requiring Defendants to file a Response to the Plaintiffs' present motion. Defendants filed a Response in Opposition on April 30, 2014. A hearing was held on May 2, 2014. For the reasons that follow, the Court will DENY Plaintiffs' Emergency Motion for Temporary Restraining Order.

---

[1] At the hearing, Plaintiffs changed their request to $1.75 million dollars due to the parties dispute concerning the amount of money that has been returned by Defendants. *See* fn.2, *infra*. However, as explained below, Plaintiffs cannot establish that injunctive relief is warranted. Thus, the fact that Plaintiffs have decreased the amount they seek to have placed in an account with the Court does not change this Court's conclusion that injunctive relief is unwarranted under the circumstances.

## II.  FACTUAL BACKGROUND

FMOF II is an investment vehicle that owns a portfolio of shares of various social media companies, such as Facebook and Groupon.  The investment goal of FMOF II was to purchase shares of social media companies when the companies were privately owned and then sell those shares once the companies became publically traded through an initial public offering.

Plaintiffs allege that their investment in FMOF II was memorialized in a December 7, 2011 Letter Agreement. Only Defendants FMOF Management Associates, LLC, Facie Libre Management Associates, LLC and non-party FMOF II signed the December 2011 Letter Agreement.  Within FMOF II, Mazzola and DiSanluciano established Libre Associates II, LLC ("FLA II") for the purpose of holding the Facebook stock.  Potential investors could not purchase Facebook shares directly.  Rather, a potential investor would purchase Series of FMOF II because FMOF II held interest in FLA II.

Section III of the December 2011 letter granted Plaintiffs' "Put Rights," which granted them the right and option "to redeem (or purchase) all or any portion(s) of the Investments (including any individual Series or portions of various Series) held by each Purchaser upon the exercise by [a] Purchaser[s] of its Put Right[s] . . . at any time following the one year anniversary of the date the purchase of the particular Series was funded."  *See* Compl., Ex.  A at 4.  All of the named Defendants "agreed to personally guarantee all payments that Manager may be required to make to Purchasers related to the Put Rights."  *See* Plfs.' Em.  Mot., Ex.  B at 1.

On August 14, 2012, Plaintiffs exercised the "Put Rights" with respect to all of their Facebook shares.  *Id*., Ex. D.  Plaintiffs maintain that Defendants have failed to return Plaintiffs' investment with respect to the Facebook shares.  Pursuant to the 2011 letter, Defendants were required to remit the sale proceeds within 45 days of Plaintiffs' put notice.   *See* Compl., Ex.  A at 4.  Plaintiffs claim that Defendants retained the Facebook shares until May 9, 2013 when they were sold for $27.52 per share.  Plaintiffs exercised their "Put Rights" as to the Palantir shares on October 9, 2012.  Defendants sold

the Palantir shares without paying Plaintiffs for their shares.  To date, Defendants have only returned $500,000 or 12% of Plaintiffs' entire investment.[2]  Plaintiffs further assert that Defendants failure to disclose the substantial compensation they received in connection with the investments related to the pre-IPO shares has led to the Securities and Exchange Commission's initiation of a lawsuit against many of the Defendants named herein in a California federal district court.

Plaintiffs maintain that an immediate restraining order is necessary to preserve their property that continues to be unlawfully retained by Defendants.  Plaintiffs argue that they have reason to believe Defendants are distributing Plaintiffs' investment as well as the ill-gotten profits derived from the sale of Plaintiffs' Facebook and Palantir shares.  Without this Court's intervention, the Plaintiffs assert that they will have no recourse to collect  their investment and profits due and owing under the parties' December 2011 Letter Agreement and Guarantee.

### III.  LAW & ANALYSIS

### A.  Standard of Review

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit.  *See University of Texas v. Camenisch*, 451 U.S. 390 (1981).  Whether to grant such relief is a matter within the discretion of the district court.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 540 (6th Cir. 2007).   The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction.  *See Sandison v. Michigan High School Athletic Assoc.,* 64 F.3d 1026, 1030 (6th Cir. 1995).  The four factors that must be balanced and considered before the court may issue a temporary restraining order or preliminary injunction include: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer

---

[2]  The parties dispute how much has been remitted to Plaintiffs.  Defendants maintain they returned more than $4,000,000.00 to Plaintiffs.

irreparable injury without the injunction; (3) the harm to others which will occur if the injunction

is granted; and (4) whether the injunction would serve the public interest. *Certified Restoration*, 511

F.3d at 542; *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P.*

*v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

"None of these factors, standing alone, is a prerequisite to relief; rather, the court should

balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).  Preliminary

injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic

tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).

## B.  Likelihood of Success on the Merits

Plaintiffs argue that there is an "overwhelming likelihood" of success on the merits of their

claims because the 2011 Letter Agreement and the Guarantee required that Defendants return Plaintiffs'

investment once they exercised their "Put Rights."   Moreover, all of the Defendants named herein

personally guaranteed the payments required pursuant to the parties' agreements.

Conversely, Defendants maintain that Plaintiffs do not have a likelihood of success on the

merits.  Defendants argue that all of Plaintiffs' claims are subject to arbitration pursuant to the FMOF

II Operating Agreement.  Defendants assert that as a condition to becoming members of FMOF II,

Plaintiffs became parties to FMOF's Amended and Restated Operating Agreement by executing certain

Subscription Agreements.  The Operating Agreement contains an arbitration agreement:

> 14.1 Dispute Resolution Process.   In the event of any claim, dispute or controversy
> arising under, out of or relating to this Agreement or any breach or purported breach
> thereof (the "Dispute") which the Parties hereto have been unable to settle or agree
> upon in the normal course of business, the Parties shall follow the dispute resolution
> process as set forth herein.

*See* Def.'s Mot. to Dismiss, Ex. 1.  The FMOF II Amended and Restated Operating Agreement further

states:

> 14.4 <u>Exclusivity.</u>  The procedures specified in this Article XIV shall be the sole and exclusive procedures for the resolution of Disputes between the Parties arising out of or in connection with this Agreement; provided, however, that a Party, without prejudice to the above procedures, may seek a preliminary injunction or other preliminary judicial relief in the court specified in paragraph 14.7, if in its sole judgment such action is necessary to avoid irreparable damage or to preserve the status quo.

The FMOF II Amended and Restated Operating Agreement also contains a forum selection clause requiring any proceedings brought pursuant to Paragraph 14.4 to be initiated in state or federal courts sitting in New York County, New York. *Id.* at ¶ 14.7.  Lastly, the Agreement was "deemed to include the Investment Management Agreement, the Subscription Agreement and any Side Letters (which may modify the terms of this Agreement with respect to the Members party thereto) . . . ." *Id.* at ¶ 15.3. Side letters are defined as "any written agreements or side letters entered into by the Company and one or more Members on or after the date hereof." *Id.* at 6.

Defendants contend that Plaintiffs demanded a waiver of fees and a put option, which were not made available to other FMOF II investors.  To memorialize these agreements, the parties entered into the 2011 Letter Agreement, which references the Operating Agreement and states that its purpose is to memorialize "various terms of the Investments that are (i) not documented elsewhere; or (ii) may conflict with various provisions of the . . . FMOF II OA." *See* Compl., Ex. A at 1.  Plaintiffs counter that the 2011 Agreement represented the entire agreement between the parties relying on the following language:

> To the extent that any provision of this letter conflicts with any other provision(s) of any other documents or agreements that are related to or concern the investments . . . the terms and conditions of the letter shall prevail.
>
> *                    *                    *
>
> This letter constitutes a valid and binding obligation of the Manager, Manager II, FMOF II, and Purchasers and supersedes any actual or potentially conflicting words in the FMOF OA or the Facie Libre OA.

-6-

*See* Compl., Ex. A, § 5.  Plaintiffs maintain that because the 2011 Letter Agreement is silent as to arbitration, this requires the conclusion that the Letter represents the parties intent to forego arbitration. Based on the arbitration provision, this Court may lack jurisdiction to review the merits of this matter.[3]

Plaintiffs are correct that a district court has jurisdiction under the Federal Arbitration Act to issue injunctive relief where a dispute is subject to a mandatory arbitration clause.  However, the moving party must still satisfy the standard set forth in Rule 65.  *See Performance Unlimited, Inc. v. Questar Publishers*, 52 F.3d 1373,1380 (6th Cir. 1995).  The authority of the district court to order preliminary injunctive relief despite a mandatory arbitration clause is appropriate, "where the withholding of injunctive relief  would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, could not return the parties substantially to the status quo ante."  *Id.*  (internal quotations omitted).

In *Questar Publishers*, the plaintiff sought the issuance of a preliminary injunction requiring the defendant to pay royalties to the plaintiff pursuant to the parties' licensing agreement.  *Id.*  at 1377. The plaintiff in *Questar Publishers* established that absent injunctive relief, it would be irreparably harmed because of "the collapse of its business, which will render the process of arbitration a hollow and meaningless formality."  *Id.   Questar Publishers* is distinguishable from the matter before this Court.  As explained in the section discussing irreparable harm, there is no suggestion in the record that Defendants will be unable to compensate Plaintiffs should they ultimately succeed in the arbitral forum. As such *Questar Publishers* would appear to preclude this Court from issuing injunctive relief under the circumstances present here.

While Plaintiffs may ultimately succeed on the merits of their breach of contract claim, the

---

[3] Plaintiffs have also agreed to dismiss Count II in its entirety and dismiss Mazzola and FMOF II as to Count III only.

other factors this Court must consider favor the denial of Plaintiffs' requested relief.

### C.  Irreparable Harm

To satisfy this prong of the test, a party must demonstrate that unless the injunction is granted, it will suffer "'actual and imminent harm' rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Here, Plaintiffs seek monetary damages. It is well settled that harm is not irreparable if it is compensable by money damages. *Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th Cir. 2009); *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Plaintiffs have made no effort to substantiate their claim that they will suffer irreparable harm if an injunction is not granted. Defendants attached the affidavit of John Bivona, a manager of the Defendant entities, to their Response, which states that: "None of the Corporate Defendants has dissipated or has any intention of dissipating corporate assets in the future." *See* Resp., Ex. 1 at ¶ 2. Bivona further states that "[t]here are no plans to dissolve FMOF II or any of the Corporate Defendants or to leave these entities as "shells" as claimed by the Plaintiffs." *Id.* at ¶ 3.

Plaintiffs reliance on *United States Securities and Exchange Commission v. Bravata*, 763 F. Supp. 2d 891 (E.D. Mich. 2011), is misplaced as the standard for granting preliminary injunctions in actions brought by the Securities and Exchange Commission is different than the standard under Rule 65 of the Federal Rules of Civil Procedure. *Id.* at 913 ("[U]nlike private actions, which are rooted wholly in the equity jurisdiction of the federal court, SEC suits for injunctions are 'creatures of the statute.' Therefore, 'proof of irreparable injury or the inadequacy of other remedies as in the usual suit for injunction' is not required.") (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975)). This is a private matter rather than an enforcement action brought by the Securities and Exchange Commission.

Furthermore, the Court declines to follow the other case relied upon by Plaintiffs, specifically,

*Concheck v. Barcroft*, No.  2:10-cv-656, 2010 WL 4117480 (S.D. Ohio Oct.  18, 2010).  In *Concheck*, the plaintiff asserted various claims stemming from his investment relationship with the defendants. *Id.* at *1.  The *Concheck* court granted the plaintiff's motion for injunctive relief and request to deposit $500,000.00 into an interest bearing account with the clerk of the court.  *Id.*  at *3.  The *Concheck* court recognized the Supreme Court's admonition that district courts lack the authority to issue preliminary injunctions freezing the defendant's assets pending adjudication of claims for money damages.  *Id.* at *2.  However, the *Concheck* court concluded that the plaintiff's claim for unjust enrichment "sounds in equity," thus injunctive relief did not run afoul of the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v.  Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).  *Id.*  at *2-3.

While Plaintiffs similarly assert a claim for unjust enrichment, their claim is most likely non-cognizable under Michigan law because an express contract governs the subject matter at issue herein.  *See Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827 (2006) ("In this case, an express contract, the 1987 loan agreements, governs the parties' loan. This alone would foreclose plaintiff's unjust enrichment claim."); *see Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003) ("[A] contract will be implied only if there is no express contract covering the same subject matter.").  In any event, *Concheck* is not controlling precedent and the Court does not find its reasoning persuasive.  As such, *Concheck* likewise does not support Plaintiffs' argument.[4]

_____

[4] Plaintiffs reliance on *Fehribach v.  City of Troy*, 341 F.  Supp.  2d 727 (E.D. Mich.  2004), is also misplaced.  *Fehribach* did not involve compensatory monetary damages, rather the plaintiff in *Fehribach* sought preliminary injunctive relief preventing the City of Troy from enforcing time and numerical limits on political signs.  *Id.* at 728-29.  The *Fehribach* court concluded that "[p]laintiff will suffer irreparable injury if he is prevented from displaying more than two political yard signs." *Id.*  at 733.  The court explained:

This is because the loss of a First Amendment right constitutes irreparable harm as a matter of law.  The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury.

Additionally, Plaintiffs delay in bringing the instant motion suggests they will not suffer irreparable harm.  Plaintiffs filed the instant action nearly five months ago, yet they are just now requesting injunctive relief.  They do not identify any event or change in circumstances within the last five months that necessitates the need for injunctive relief.  *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 405 (6th Cir. 2013) ("an unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm"); *see also Protech Diamond Tools, Inc. v. Liao*, No. 08-3684, 2009 U.S. Dist. LEXIS 53382, at *19-20 (N.D. Cal. Jun. 8, 2009) ("Undue delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction.")

Plaintiffs have failed to demonstrate irreparable harm which is the "single most important prerequisite for the issuance of a preliminary injunction." *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).  This factor favors denying injunctive relief.

### D. Harm to Others

Plaintiffs argue that Defendants will not be harmed by placing the funds in escrow.  To the contrary, the Court agrees with Defendants that an injunction will cause harm to others, Defendants and other member investors included.  If Defendants were ordered to withdraw over a million dollars from their operations, this would negatively impact Defendants' operations, as well as potentially expose them to premature tax consequences.  Such a withdrawal also could affect the rights and assets of other investors in funds managed by some of the Defendants.  This factor likewise favors denying injunctive relief.

### E.  Public Interest

This is a private dispute, thus the public interest factor does not appear relevant to the analysis. This factor does not favor either side's position.

---

*Id.* (internal quotations and citations omitted).  As such, *Fehribach* is distinguishable from the circumstances present here.

**IV.  CONCLUSION**

Because the balance of factors favors denial of Plaintiffs' requested relief, Plaintiffs' Emergency Motion for Injunctive Relief [#18] is DENIED.

SO ORDERED.

Dated: May 2, 2014                          /s/Gershwin A Drain
                                            GERSHWIN A.  DRAIN
                                            UNITED STATES DISTRICT JUDGE